NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250946-U

NO. 4-25-0946

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 20, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McDonough County |
| DEMOND E. WILSON JR., | ) | No. 23CF34 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Nigel D. Graham, |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court.
Justices Grischow and Cavanagh concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The appellate court affirmed defendant's 12-year prison sentence because the trial court did not, in fashioning the sentence, (1) rely on facts inherent in the offense, (2) speculate about facts, or (3) reject pertinent mitigating factors.

¶ 2    Defendant, Demond E. Wilson Jr., pleaded guilty to second degree murder (720 ILCS 5/9-2(a)(2) (West 2022)). In January 2024, the trial court sentenced him to 12 years' imprisonment. On appeal, he argues his sentence is excessive because the court, in fashioning the sentence, improperly (1) considered factors inherent in second degree murder, (2) relied on speculation, and (3) rejected pertinent mitigating factors. We affirm.

¶ 3                          I. BACKGROUND

¶ 4    In March 2023, defendant was at a house party where Jerman Beathea was shot and killed. Defendant was arrested and charged with various offenses related to Beathea's death. An amended information charged defendant with second degree murder. Defendant agreed to plead

guilty to second degree murder and, in exchange, the State dropped the remaining charges.

¶ 5                                    A. Guilty Plea

¶ 6            The State proffered the following factual basis for defendant's guilty plea. In March 2021, defendant, who had a firearm owner's identification (FOID) card and a concealed carry license (CCL), purchased a Glock 9-millimeter handgun. On March 25, 2023, he went to a house party in Macomb, Illinois. Between 150 and 200 people were in the house, which was dimly lit with red light bulbs. Defendant got into a verbal altercation with a few people he did not know. Several people were in the immediate area of the verbal altercation. Beathea, who was also at the party and had a FOID card and CCL, was not one of the people involved in the altercation and did not know defendant. A woman at the party yelled, "[H]e's got a gun." It was not clear whether the woman was referring to defendant, Beathea, or someone else. Following the altercation, people exited the house and congregated on the front lawn. Initial gunshots were heard, then "15 shots that occurred in rapid succession with the final three shots occurring nine to ten seconds later."

¶ 7            When the police arrived, they saw "multiple people with gunshot wounds." Several people, including defendant, were treated for their injuries. Defendant's injuries consisted of four shots to the abdomen and one shot to his wrist. None of the gunshots to defendant's body had exit wounds. Over three hours after the police arrived and defendant was treated for his injuries, defendant's blood-alcohol concentration (BAC) was 0.157. Beathea, who was shot six times, was pronounced dead at the scene.

¶ 8            During a search of the house, the police located defendant's gun. The gun had a round in the magazine and the chamber. Several cartridge cases from defendant's gun were discovered in the house. The police also found a .40-caliber Glock handgun magazine containing five unfired rounds. (The gun itself was not recovered.) The .40-caliber Glock handgun was fired

at least five times. Gunshot residue found on Beathea's right hand established Beathea either discharged a firearm or was in close proximity to it, and DNA testing revealed Beathea had touched the .40-caliber Glock magazine. Based on witnesses' statements and all the evidence the police collected at the scene, the authorities believed the injuries defendant and Beathea sustained occurred when the shots were fired in the house.

¶ 9 Detective Jordan Hawes interviewed defendant at the hospital. After admonishing defendant about his rights, defendant told Hawes he was armed with his gun and went to the party with his girlfriend and a male friend. Defendant saw a man with a gun. He tried to run away but discovered he had been shot. Defendant "did not remember shooting [his gun]."

¶ 10 The State asserted that, based on defendant's unfamiliarity with the people at the house party, as well as the verbal altercation occurring within minutes of the shooting, defendant would say he believed there was a threat to his physical safety that necessitated the use of deadly force. "However, *** due to *** Defendant's level of intoxication, the lack of adequate lighting, and the excessive number of people within that room, that belief was unreasonable."

¶ 11 Immediately thereafter, before accepting defendant's guilty plea, the trial court gave defendant the opportunity to provide any additional information. Defendant declined to do so. The court accepted defendant's guilty plea, finding it knowingly and voluntarily entered and supported by a factual basis.

¶ 12 B. Sentencing

¶ 13 At defendant's sentencing, the State called Hawes as a witness. Hawes testified he was called to the shooting during the early morning hours of March 25, 2023. The shooting occurred in a single family, 1½-story home. Hawes stated the entrance of the house led into a large living room, with a bedroom to the north and one to the south. Adjacent to the living room and one

of the bedrooms was a kitchen. The house was "[v]ery" "packed" during the party.

¶ 14        Officers discovered 10 people were injured and 1 person, Beathea, was killed. Defendant was involved in a verbal altercation before the shooting. However, Beathea was not part of that altercation. Defendant had no contact with Beathea before the shooting, and neither man knew the other. Although Hawes and other officers spoke to approximately 70 people who were at the scene, the witnesses were uncooperative. Hawes eventually discovered defendant was involved in the shooting and investigated whether defendant fired his weapon first.

¶ 15        During a search of the house, defendant's gun was located in the kitchen by the stove. Thirteen cartridge cases from defendant's gun were found, and five cartridge cases from a .40-caliber gun were recovered. Three projectiles (or bullets) from a .40-caliber gun were discovered on top of the washing machine, in the north wall of the home, and on the floor of the northeast bedroom. Projectiles from defendant's gun were recovered from Beathea and two other victims. During Beathea's autopsy, the medical examiner found one projectile in Beathea's right upper chest, one in his abdomen, and one in his right forearm. Beathea also sustained bullet wounds to his right upper arm, left leg, and right upper thigh. Beathea's chest and abdomen wounds penetrated the front of his body and exited through the back. The four remaining bullet wounds penetrated the back of Beathea's body and exited the front. Hawes explained the front-to-back wounds were sustained while Beathea was facing defendant and the back-to-front wounds were sustained when Beathea was facing away from defendant.

¶ 16        Doctors who treated defendant for his injuries found four bullets and a fifth injury to his hand that was sustained when a bullet grazed it. Defendant's BAC at 5:14 a.m. on the day of the shooting was 0.157. Beathea's BAC was 0.088. When Hawes talked with defendant at the hospital, defendant said he was at the "Eagles Club" before he went to the house party. Defendant

had his gun with him at the house party but "could not remember" whether he fired it.

¶ 17   Several video recordings of the incident were admitted at the hearing. State's exhibit Nos. 1 and 2, video recordings from the house's Ring camera, showed defendant and many other individuals waiting to enter the house. Many people entered the house before defendant, and defendant can be seen holding and drinking from a tall green or brown glass bottle. Defendant entered the house at 1:39:29 a.m. After defendant entered the residence, a woman at the door told partygoers who exited they would have to wait to reenter until others left.

¶ 18   State's exhibit No. 3, a Snapchat video taken by a partygoer, showed defendant in the living room of the house having a verbal altercation with another man at the party. Defendant pushed the man in the chest, and the man then held up his right hand, palm facing out toward defendant. After this, the video pans away from defendant and the other man. A woman can then be heard stating, "He got a gun," multiple times, but the video did not show defendant or anyone else with a gun. It is also unclear from the video which woman made this statement. The video ended soon thereafter. Beathea was not seen on the video.

¶ 19   Another recording from the house's Ring camera, State's exhibit No. 4, showed several partygoers "hastily" left the house through the front door and congregated in the front yard, starting at 1:52:15 a.m. State's exhibit No. 6, a recording from a neighboring home's Ring camera, recorded the sound of gunfire starting at 1:53:56 a.m. Two initial shots were heard, followed by rapid gunfire and then three slower gunshots. Hawes described the rapid gunfire as "a continuous volley of gunshots." The final sound of gunfire on the recording occurs at 1:54:08 a.m.

¶ 20   After Hawes testified, the State rested, and defendant presented several character witnesses. Their testimony and letters revealed defendant was, among other things, (1) involved with his church, (2) nonviolent, (3) a loyal employee, (4) not a risk to the community, (5) a good

father figure, (6) respectful, (7) a role model, (8) remorseful, (9) a model inmate, (10) cooperative, (11) courteous, (12) positive, (13) honest, (14) accepting of help, (15) hardworking, (16) loving, (17) reliable, (18) peaceful, and (19) of good moral character. His character witnesses asked the trial court to give defendant probation, while Beathea's mother, who indicated Beathea had his gun at the party, asked the court not to do so, as defendant had killed her son.

¶ 21       Defendant testified on his own behalf, asserting he was shot seven times at the house party. He elaborated he was shot once in his chest, shoulder, forearm, and butt and three times on his side, near his pelvis. When his attorney asked him about restitution, he indicated he would pay it if the trial court ordered him to do so.

¶ 22       After the parties gave their closing arguments, defendant made a statement in allocution. He asserted:

> "First off, I would like to give my condolences to the family. I am a man who believes in God and who goes to church. Despite the circumstance, I am aware of the end results which I did not want to happen. I am so sorry that this has happened and that you lost a loved one.
>
> I came to Macomb that weekend in March to enjoy myself with one of my friends and girlfriend. Never in a million years did I think I would find myself in a situation where I was afraid for my life. I ended up running into my god sister ***. I didn't know nobody else down here but them. ***
>
> We ended up going to a party we heard about. I was drinking like everybody else, but I was still looking to have a good time. I started having a cool conversation with somebody I seen at an event earlier. That conversation turned into something else by others associated with the person that intervened. And in the midst of that,

shots got to ringing off. I tried to run and I started realizing I was shot. I had to defend myself or I wouldn't be here to say this.

I never intended for any of this to happen like it did. I am not this person who is violent nor want to see anything happen to nobody. I don't—I don't have it in my heart to do such a thing. Every day goes by and I have flash backs about that night. I pray all day long asking God to forgive me for my actions 'cuz I know the Bible says don't kill. Every day I have to live with knowing I took a life and that hurts my soul 'cuz I know I'm not that person.

All my life I've been striving to be—to be somebody that does good for others. All I do is work and enjoy life and spend time with my family. Every day I regret coming down to Macomb for that weekend. I firmly believe that I was acting in self-defense. I don't ever want to see anyone hurt or in jail but I also didn't want to die. I tried to run but there was nowhere to go. If I could take back that night, I would. *** I wish I could have talked with the other guy before things went sideways. I realize now how quickly things can be taken from you in this life.

These last nine months I have missed out work, time with my girlfriend, my [girlfriend's] son, my mom, and the rest of my family. I believe God spared me for a reason, and I'm going to use this tragedy as a fuel to be a better person and man."

¶ 23    The trial court sentenced defendant to 12 years' imprisonment. In pronouncing the sentence, the court noted the presentence investigation report (PSI) was "overwhelmingly positive." Defendant's criminal history consisted of only one speeding ticket, and he was a high school graduate, lawfully purchased and licensed his firearm, came from "a tight-knit family," and had "a quantity and quality of folks who *** [came] *** to testify on [his] behalf" unlike any the

- 7 -

court had ever seen. However, the court stated when it turned to the nature and circumstances of the offense, "the positive information clearly stops." The court noted, to "put it in the simplest of terms," defendant was armed, "got drunk[,] and shot up a house party." Based on the videos and lab reports, which showed defendant's BAC was almost twice the legal limit hours after the shooting, defendant was "clear[ly] *** intoxicated." The court noted, "[o]bviously," defendant, who knew or should have known he could not carry a firearm while under the influence of alcohol, was not drinking after he was shot.

¶ 24　　　　The trial court found defendant, who was shot approximately 5 times, fired his gun 13 times in total. Six of those shots hit Beathea and killed him, "[a]ll over some sort of argument." The court asserted, "Clearly, there's no justification for shooting someone over an argument." The court then observed that in addition to killing Beathea, defendant's act of firing a gun at a crowded house party injured two bystanders, "which is a natural consequence of firing multiple shots." The court classified defendant's behavior as "dangerous and absolutely appalling," noting it was "an absolute miracle" no one else but Beathea was killed.

¶ 25　　　　The trial court then stated:

　　　　　"My understanding is that you were operating under the belief that you were defending yourself. That mistaken belief is inherent in the charge to which you pleaded guilty. You stated today in your Statement of Allocution that you tried to get away, that you then realized that you were shot and defended yourself.

　　　　　I have to take that assertion with a very large grain of salt. First, it was not a sworn statement. There are no witnesses corroborating the self-serving statement. You're asking me to rely on your recollection of the events when I know from the evidence that you were highly intoxicated at the time. The only person who can

really confirm or deny your version of events as to who shot first is *** Beathea, who you killed."

The court observed, based on the video evidence presented, "the speed with which those shots rang out makes it impossible that you tried to get away, realized that you were shot, and then returned fire after that." Rather, it was "very clear" defendant and Beathea were shooting at each other when the "shots *** rang out in extremely rapid succession."

¶ 26		The trial court then turned to the statutory factors in aggravation and mitigation. In mitigation, the court again observed defendant had no history of criminal activity. See 730 ILCS 5/5-5-3.1(a)(7) (West 2022). The court declined defendant's request to find he acted under strong provocation (see *id.* § 5-5-3.1(a)(3)) or there were substantial grounds tending to excuse or justify defendant's criminal conduct, though failing to establish a defense (see *id.* § 5-5-3.1(a)(4)). Regarding mitigating factor three, the court found the only evidence of provocation was the verbal argument defendant engaged in with people he did not know. Although the court "technically" did not know who drew a weapon first, the court believed, based on the speed with which the shots were fired, defendant's gun was drawn even if he did not fire first. Moreover, the court observed again that defendant was highly intoxicated; brought his gun to the house party, even though he knew or should have known, as the possessor of a FOID card and a CCL, that was illegal; and fired at Beathea, striking him and others. In light of that and all the other evidence, the court determined there was "[not] enough to make a finding that there's a strong provocation at the time." Concerning mitigating factor four, the court noted, "[a]gain, I don't find that you've shown substantial grounds tending to excuse or justify your offense." The court reiterated, "[Defendant was] drunk with a gun at a crowded party and got into a shoot-out."

¶ 27		The trial court also found inapplicable mitigating factors five, six, eight, and nine.

See *id.* § 5-5-3.1(a)(5), (6), (8), (9). Regarding factor five, *i.e.*, defendant's conduct was induced or facilitated by someone else (*id.* § 5-5-3.1(a)(5)), the court concluded it did not hear sufficient evidence to make this finding. The court asserted it "[did not] know the sequence of those events," meaning it "[did] not know whether [defendant] or *** Beathea or someone else instigated this fight and started shooting first." Concerning factor six, the court stated it "[had] not heard a willingness to compensate the victim so I cannot find factor 6." See *id.* § 5-5-3.1(a)(6). As to factor eight, *i.e.*, whether defendant's criminal conduct was the result of circumstances unlikely to recur (*id.* § 5-5-3.1(a)(8)), the court asserted defendant had no criminal history. However, as the State indicated during closing, "no one could have predicted that [defendant]," a law-abiding citizen, "would have fired 13 shots at a house party[,] *** leading to at least two people shot and one dead." The court adopted the State's position, commenting on the "depravity" of the crime. The court found defendant's "willingness to fire that many shots at a crowded party is of serious concern, and it really casts a pallor over the good character that [the court] hear[d] from [defendant's] witnesses and that [the court saw] in the [PSI]." Regarding factor nine, *i.e.*, defendant's character and attitude indicate he is unlikely to commit another crime, the court asserted, "I haven't really heard much resembling an apology." See *id.* § 5-5-3.1(a)(9). The court explained, "I've heard some condolences to the family of *** Beathea," "[b]ut then the next thing I hear is that *** Defendant had no choice but to fire 13 shots in a crowded party." The court continued, "I do not believe that from what I've heard today and what I've heard through the course of the evidence that I have sufficient information to find that factor."

¶ 28       The trial court then considered the factors in aggravation, found probation would deprecate the seriousness of the offense, and noted imprisonment would not endanger defendant's medical condition, which resulted from the bullet wounds he sustained.

- 10 -

¶ 29                           C. Proceedings After the Sentencing

¶ 30        The trial court admonished defendant regarding his right to appeal. Defendant filed a motion to reconsider, and almost three months later, defense counsel filed a certificate pursuant to Illinois Supreme Court Rule 604(d) (eff. Apr. 15, 2024). The court denied the motion, and defendant filed a notice of appeal. On appeal, this court vacated the court's denial of defendant's motion to reconsider and remanded the case for further proceedings in compliance with Rule 604(d), as defense counsel failed to comply with the rule. *People v. Wilson*, 2025 IL App (4th) 241000-U, ¶ 2.

¶ 31                                     D. Remand

¶ 32        In July 2025, defendant, with the help of counsel, filed a motion to reconsider, and counsel filed a Rule 604(d) certificate. In the motion, defendant argued the trial court improperly considered factors inherent in the offense and rejected pertinent mitigating factors. Defendant contended although the court acknowledged a mistaken belief in self-defense was inherent in second degree murder, it nevertheless used this as justification for failing to find mitigating factors after expressly stating it did not " 'technically' " know who shot first. Defendant observed his imperfect self-defense claim, as noted at the guilty plea proceeding and accepted by the State, was predicated on the fact he (1) was intoxicated, (2) was unfamiliar with the people at the dimly lit party, (3) got into a verbal altercation soon after entering the house that led to the shooting, and, thus, (4) believed there was a threat to his physical safety which necessitated the use of deadly force. Rather than considering the particulars of the offense in assessing the viability of mitigating factors three, four, and five (see 730 ILCS 5/5-5-3.1(a)(3), (4), (5) (West 2022)), defendant argued the court instead refused to find these factors in mitigation applied simply because it believed defendant's imperfect self-defense claim was unreasonable. That is, by finding defendant's belief

- 11 -

in the need to use deadly force unreasonable, the court used the nature of defendant's offense itself to aggravate defendant's sentence. Defendant also argued, "[T]he court ignored pertinent mitigating factors six, eight, and nine by making judgements that contradicted the evidence presented." See *id.* § 5-5-3.1(a)(6), (8), (9). Specifically, he claimed the record showed he was willing to compensate the victim, showed remorse, lacked a criminal history, worked steadily, and had numerous upstanding citizens testify to his good character.

¶ 33        Following a hearing, the trial court denied defendant's motion to reconsider. After emphasizing and reiterating the nature and circumstances of the offense, the court maintained it considered all the mitigating and aggravating factors and properly applied them. The court rejected any contention it considered factors inherent in the offense, noting it considered only the factual basis and evidence presented at the sentencing hearing in imposing a 12-year sentence.

¶ 34        This appeal followed.

¶ 35                                  II. ANALYSIS

¶ 36                                  A. Forfeiture

¶ 37        Before considering the merits of this appeal, we address the State's argument defendant has forfeited review of the issue he raises because he failed to make a contemporaneous objection during the sentencing hearing. "It is well settled that, to preserve a claim of sentencing error, both a contemporaneous objection and a written postsentencing motion raising the issue are required." *People v. Hillier*, 237 Ill. 2d 539, 544 (2010).

¶ 38        Defendant admits he did not contemporaneously object when the trial court, in fashioning the sentence, considered various improper facts, speculated about them, and rejected mitigating factors. However, relying on *People v. Saldivar*, 113 Ill. 2d 256 (1986), he claims no such contemporaneous objection was required here. We agree. As our supreme court noted in

*Saldivar*, "[t]o preserve any error of the court made at that time [of sentencing], it [i]s not necessary for counsel to interrupt the judge and point out that he was considering wrong factors in aggravation." *Id.* at 266. Thus, because defendant was not required to object while the court was announcing its sentence and he addressed in his postsentencing motion the errors he raises now, we find the issue is not forfeited.

¶ 39                                B. Excessive Sentence

¶ 40        The Illinois Constitution provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. 1, § 11. A trial court has discretion to determine which of the four purposes of sentencing—retribution, deterrence, incapacitation, and rehabilitation—predominates in a given case. *People v. Page*, 2022 IL App (4th) 210374, ¶ 52. "A reviewing court gives substantial deference to the trial court's sentencing decision because the trial judge, having observed the defendant and the proceedings, is in a much better position to consider factors such as the defendant's credibility, demeanor, moral character, mentality, environment, habits, and age." *People v. Snyder*, 2011 IL 111382, ¶ 36. We will not reverse a trial court's sentencing decision because we would have weighed the factors differently. *People v. Musgrave*, 2019 IL App (4th) 170106, ¶ 56.

¶ 41        A statutorily authorized sentence is presumptively proper, and we may not disturb the trial court's evaluation of proper factors absent an abuse of discretion. *Id.* "A trial court's sentence is an abuse of discretion if it is greatly at odds with the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense." *Id.*

¶ 42        Here, defendant pleaded guilty to second degree murder, a Class 1 felony. 720 ILCS 5/9-2(d) (West 2022). He faced a term of probation of up to 4 years or a prison term of between 4

- 13 -

and 20 years. 730 ILCS 5/5-4.5-30(a), (d) (West 2022). Defendant's 12-year prison term falls in the middle of the prison-term range. (We note, in contrast to what the parties and the trial court indicated during the proceedings, the second-amended information charging defendant with second degree murder, which is the offense to which defendant pleaded guilty, conspicuously provided "Special Sentencing Range pursuant to 730 ILCS 5/5-4.5-30(a) [(West 2022).] Not less than 4 years, not more than 20 years.")

¶ 43    Although defendant recognizes his 12-year sentence falls in the middle of this range, he argues his sentence is excessive because the trial court improperly (1) considered factors inherent in second degree murder, (2) relied on speculation, and (3) rejected pertinent mitigating factors. We address each of these contentions in turn.

¶ 44                    1. *Factors Inherent in the Offense*

¶ 45    "A factor that is implicit in the offense for which the defendant has been convicted generally cannot be used as an aggravating factor in sentencing for that offense." *People v. Brown*, 2023 IL App (4th) 220476, ¶ 44. "In other words, a single factor cannot be used both as an element of an offense and as a basis for imposing a harsher sentence than might otherwise have been imposed." *Id.*

¶ 46    "There is a strong presumption that the trial court relied on proper legal reasoning in determining a sentence, and a court of review must consider the record as a whole, rather than focus on a few words or statements made by the trial court," in determining whether that presumption was rebutted. *Id.* ¶ 43. Defendant bears the burden of affirmatively rebutting the presumption the sentence was based on proper considerations. *Id.*

¶ 47    "The prohibition of such a 'double enhancement' is a rule of statutory construction based on the assumption that, 'in designating the appropriate range of punishment for a criminal

offense, the legislature necessarily considered the factors inherent in the offense.' " *Id.* ¶ 44 (quoting *People v. Phelps*, 211 Ill. 2d 1, 12 (2004)). Thus, "[w]hether the trial court relied on improper factors in fashioning a defendant's sentence is a question of law, which we review *de novo*." *Id.* ¶ 43.

¶ 48　　　　Defendant claims, "Since an imperfect self-defense is inherent in [second degree murder], it was improper for the [trial] court to consider this imperfect provocation, justifiable excuse, and inducement as justification for failing to find mitigating factors three to five." See 730 ILCS 5/5-5-3.1(a)(3), (4), (5) (West 2022). He asserts, "Though the court acknowledged mistaken self-defense was inherent to the charge," it "focused its sentencing ruling on the conclusion that [defendant's] assertion of self-defense was 'impossible.' " Defendant argues the court "then proceeded to weave this inherent part of the charge into its justification for failing to find mitigation," even though "[t]he court also conceded it did not 'technically' know who shot first."

¶ 49　　　　The second degree murder charge to which defendant pleaded guilty provides:

> "(a) A person commits the offense of second degree murder when he or she commits the offense of first degree murder *** and ***:
>
> ***
>
> (2) at the time of the killing he or she believes the circumstances to be such that, if they existed, would justify or exonerate the killing ***, but his or her belief is unreasonable." 720 ILCS 5/9-2(a)(2) (West 2022).

¶ 50　　　　Here, the only mitigating factor inherent in the second degree murder of which defendant was convicted is factor four, *i.e.*, there were *substantial* grounds tending to excuse or justify defendant's criminal conduct but failing to establish a defense (730 ILCS 5/5-5-3.1(a)(4) (West 2022)). See *People v. Colegrove*, 2025 IL App (4th) 240882-U, ¶ 24. When the trial court

found this factor, as well as factors three, five, and eight (730 ILCS 5/5-5-3.1(a)(3), (5), (8) (West 2022)), did not apply, it did not reject the factors because defendant unreasonably believed self-defense was justified. Rather, it found there was insufficient evidence presented to prove these factors. Based on our review of the record, we cannot conclude this was an abuse of discretion.

¶ 51 Concerning factor three, the trial court found the only provocation was the verbal argument defendant had with people he did not know minutes after entering the house party, and given the evidence, especially the speed of the gunfire, defendant's weapon was drawn when the first bullet was shot. The court determined these facts did not indicate defendant acted under strong provocation when he shot Beathea, which the statute requires. See 730 ILCS 5/5- 5-3.1(a)(3) (West 2022) (stating a court may find in mitigation "[t]he defendant acted under a *strong* provocation" (emphasis added)). Strong provocation requires something more than what was presented here. See, *e.g.*, *People v. Murillo*, 225 Ill. App. 3d 286, 290-91, 301 (1992) (the trial court found the defendant, who was convicted of voluntary manslaughter, now second degree murder, was not acting under strong provocation when he shot and killed the victim, who had grabbed the defendant and demanded money, even though the victim had a reputation for violence and had previously stolen from the defendant while armed with a gun).

¶ 52 As to factor four, the trial court found defendant failed to establish there were *substantial* grounds tending to excuse or justify his criminal conduct but failing to establish a defense. See 730 ILCS 5/5-5-3.1(a)(4) (West 2022). In so concluding, the court noted defendant was intoxicated, went to a crowded house party, and participated in a "shoot-out," all over some verbal disagreement defendant had with strangers he encountered minutes before the shooting started. This simply does not qualify as *substantial* grounds in this context. See *Murillo*, 225 Ill. App. 3d at 290-91, 301 (finding there were no substantial grounds tending to excuse the

defendant's conduct yet falling to establish a defense when the defendant shot and killed the victim who (1) confronted the defendant and demanded money after having stolen from the defendant a week earlier and (2) persuaded the police when the defendant reported the armed robbery that the defendant was overreacting); see also Black's Law Dictionary (12th ed. 2024) (substantial means "material," "[c]onsiderable in *** amount ***; large in volume").

¶ 53　　　In so concluding, we find *Colegrove* instructive. There, the defendant entered an open plea of guilty to second degree murder, in that, at the time he killed his brother, he believed the circumstances, if they existed, justified deadly force, but that belief was unreasonable. *Colegrove*, 2025 IL App (4th) 240882-U, ¶ 5. The trial court sentenced the defendant to 10 years' imprisonment; the defendant moved the court to reconsider the sentence, arguing the court erred in finding certain mitigating factors were inherent in second degree murder; and the court reduced the defendant's sentence to 8 years' imprisonment. *Id.* ¶ 10-12. On appeal, the defendant argued the trial court should have given the substantial grounds factor more weight. *Id.* ¶ 15. We disagreed. After noting substantial grounds was inherent in the second degree murder offense to which the defendant pleaded guilty, we asserted, "[A] trial court ultimately is not bound to apply a statutory mitigating factor that is inherent in the offense." *Id.* ¶ 24. Thus, the court was not required to give the substantial grounds factor consideration at all, unless the specific nature and circumstances of the offense warranted otherwise. See *id.*

¶ 54　　　Here, no error arose when the trial court rejected factor four because, aside from the fact the nature and circumstances of the second degree murder did not warrant reducing defendant's sentence based on this factor, the court was not required to consider and give weight to factor four, as it is inherent in the offense of second degree murder at issue here.

¶ 55　　　Regarding factor five, the trial court found it did not hear sufficient evidence to

make a finding defendant's conduct was induced or facilitated by someone else. See 730 ILCS 5/5-5-3-1(a)(5) (West 2022). The court explained it did not know whether defendant, Beathea, or someone else started shooting first. The fact defendant testified at the sentencing hearing he was shot first did not require the court to accept his testimony, especially given defendant's somewhat contradictory statements made shortly after the shooting indicated he had no idea whether he even fired his weapon at all that night. See *People v. Ward*, 113 Ill. 2d 516, 532 (1986) (finding, when a defendant continues to profess his innocence, a trial court is not required to accept it and may, instead, draw reasonable inferences from it, such as whether the protestation is truthful); *People v. Younge*, 83 Ill. App. 3d 305, 309 (1980) ("The defendant's testimony, even if unrebutted, need not be believed by the trier of fact.").

¶ 56        Concerning factor eight, the trial court found, as the State argued in closing, defendant's conduct was not unlikely to recur, given no one would have anticipated defendant firing at strangers at a crowded house party over a verbal disagreement lasting only a few minutes, at most. See 730 ILCS 5/5-5-3.1(a)(8) (West 2022)). Based on the evidence, we cannot conclude this was an abuse of discretion. Taking a weapon to a party, drinking to excess, and using the weapon in an intoxicated state when fellow partygoers anger you is clearly unlike *People v. Calhoun*, 404 Ill. App. 3d 362 (2010), on which defendant relies. See *id.* at 387-88 (holding the defendant acted under extreme provocation when she aided in the killing of the man who sexually assaulted her one-year-old daughter; the appellate court found, in light of that tremendous provocation, it was unlikely the defendant, who was given the maximum sentence, would become a recidivist offender).

¶ 57        We note, at no point in addressing these factors did the trial court remark on whether it believed defendant's imperfect self-defense theory. Rather, the only time the court made such a

comment was when it was addressing the nature and circumstances of the crime. The court found, given the quick succession of the gunfire, defendant did not draw his gun in response to someone else firing at him, but, rather, he, at a minimum, had his gun drawn and ready to fire when the first shot rang out. To the extent defendant argues the court was required to accept he acted in imperfect self-defense, we disagree. Defendants plead guilty for many reasons, some of which have no bearing on whether they actually committed the crime. See *People v. St. Pierre*, 146 Ill. 2d 494, 507-08 (1992) (the defendant pleaded guilty to escape the conditions at the Cook County jail); *People v. Mercado*, 356 Ill. App. 3d 487, 491 (2005) (the defendant pleaded guilty because he believed his pregnant ex-girlfriend, with whom he had consensual sex, would testify the defendant kidnapped and sexually assaulted her because she did not want to get in trouble with the man she was dating); *People v. Bryant*, 2016 IL App (5th) 140334, ¶ 17 (the defendant pleaded guilty because he was emotionally distraught following his partner's testimony). All the trial court must do is ensure the guilty plea is made knowingly and voluntarily and supported by a factual basis (see *St. Pierre*, 146 Ill. 2d at 507), which was done here. Thus, in our view, as long as the court, in imposing a sentence, does not simply give weight to factors inherent in the offense to which the defendant pleaded guilty, which did not happen here, it should be allowed to question a factual basis presenting imperfect self-defense in addressing the nature and circumstances of the crime.

¶ 58          In sum, the only mitigating factor inherent in the second degree murder to which defendant pleaded guilty was factor four, substantial grounds tended to excuse or justify his criminal conduct. See 730 ILCS 5/5-5-3.1(a)(4) (West 2022). The trial court determined the evidence presented was insufficient to support a finding the nature and circumstances of the offense warranted weighing the substantial grounds factor in defendant's favor. Similarly, as to factors three, five, and eight, the court concluded the evidence was insufficient to find they applied.

Reading the court's sentencing determination as a whole, we find the court did not simply consider factors inherent in the offense in imposing a 12-year sentence.

¶ 59                                          2. *Speculation*

¶ 60            Defendant claims, in rejecting mitigating factors three, four, five, and eight (see *id.* § 5-5-3.1(a)(3), (4), (5), (8)), the trial court relied on speculation rather than the evidence presented. In sentencing a defendant, a court may not rely on speculation. *People v. Dempsey*, 242 Ill. App. 3d 568, 597 (1993). However, unlike speculation, drawing reasonable inferences from the evidence presented is not improper. See *People v. Johnson*, 149 Ill. 2d 118, 155 (1992).

¶ 61            When it is alleged the trial court relied on improper speculation, the defendant bears the burden of proving a link between the improper speculation and the court's decision. *Id.* Without proof of this, we presume the court relied on only competent and reliable evidence, whether direct or circumstantial, and the reasonable inferences drawn therefrom. See *id.*

¶ 62            Defendant argues the trial court speculated about whether he (1) was arguing with Beathea, (2) acted in self-defense, and (3) was drunk. First, defendant notes the trial court found the shooting happened " 'all over some sort of argument.' " He claims this was improper speculation because "there was no evidence that Beathea and [defendant] had any altercation prior to the shooting." Defendant's argument assumes too much. The shooting happened within minutes of an argument between defendant and an unknown male. In the Snapchat video, defendant was arguing with an unknown man and pushed the man when the argument got heated; a woman then indicated someone had a gun, which defendant had by his own admission; and very soon thereafter, shots were fired. The inference drawn was the shooting began because of an argument in which defendant was involved. We cannot conclude this inference was unreasonable based on the evidence.

¶ 63    Second, defendant claims the trial court improperly speculated he did not act in self-defense. In making his argument, he relies on the fact the court found it " 'impossible' [defendant] was shot and then returned fire" while also finding "it did not 'technically' know who drew their weapon first." The court inferred defendant must have had his gun drawn when the first shot was fired because the speed at which gunfire was heard after the initial shot was too fast for someone to draw a weapon in response to being fired at. That is a reasonable inference. The video showed 12 seconds elapsed between the initial gunshot and the last one. We cannot find it was unreasonable for the court to find it was unlikely, during these 12 seconds, defendant, as he claims, was shot, began to run away, realized he was shot, turned, drew his weapon, and fired his gun at least 13 times.

¶ 64    Defendant also asserts it was improper for the trial court to discount his self-defense claim simply because it was made during his statement in allocution, not under oath while he testified. Although the court did mention that fact, it was more concerned about the veracity of defendant's statement because (1) no one corroborated the self-serving statement; (2) the only person who could confirm or deny defendant acted in self-defense was Beathea, whom defendant killed; and (3) defendant was highly intoxicated when the shooting happened. Moreover, right after the shooting occurred, when defendant's memory would be fresher, he twice indicated he could not remember whether he fired his gun at all. Then, months later, after it was discovered the gun defendant owned was used to shoot and kill Beathea, defendant claimed he fired at Beathea only because, after attempting to flee, he feared Beathea was going to kill him. Moreover, the evidence was clear that defendant also wounded two other individuals. Given the facts, it was reasonable for the court to question defendant's veracity. See *Ward*, 113 Ill. 2d at 532; *Younge*, 83 Ill. App. 3d at 309.

¶ 65 Third, defendant contends it was improper for the trial court to speculate he " 'got drunk and shot up a house party.' " He argues just because his BAC was 0.157, almost twice the legal limit, at 5:14 a.m., that does not mean he was intoxicated when the shooting occurred three hours earlier. Again, we disagree. The reasonable inference to draw is defendant, who was at a club before the house party and drinking from what appeared to be a liquor bottle while waiting to get into the house party, was intoxicated at the time the shooting occurred, especially because he was treated for his injuries immediately after the shooting and would not have had access to alcohol; and perhaps most importantly, defendant's intoxication was one of the bases upon which he asserted his imperfect self-defense claim. The fact, in 14 minutes, defendant got into an argument with a stranger, which escalated into a "shoot-out" where defendant was recklessly firing his weapon, only adds to the reasonable inference defendant was intoxicated. Moreover, as noted above, other individuals were shot. If defendant is to be believed that he was defending himself only against Beathea and he provides no explanation for those injuries, a reasonable inference could be made that he was intoxicated.

¶ 66 In sum, we find the trial court did not speculate in fashioning defendant's sentence. Rather, the court considered all of the evidence presented and drew reasonable inferences therefrom.

¶ 67                    3. *Rejection of Pertinent Mitigating Factors*

¶ 68 Defendant claims the trial court improperly rejected pertinent mitigating factors six, eight, and nine in fashioning a sentence. See 730 ILCS 5/5-5-3.1(a)(6), (8), (9) (West 2022). A trial court may not "ignore pertinent mitigating factors." *Harmon*, 2015 IL App (1st) 122345, ¶ 122. That said, the court need not recite and assign value to each of the factors in mitigation. See *People v. Brazziel*, 406 Ill. App. 3d 412, 434 (2010). Rather, it is presumed the court properly

considered all the mitigating factors and evidence supporting them. See *id.* The defendant bears the burden of affirmatively establishing otherwise. *Id.*

¶ 69 In considering whether mitigating factors were improperly rejected, it is important to remember the seriousness of the offense is the most important factor in fashioning a sentence. *People v. Quintana*, 332 Ill. App. 3d 96, 109 (2002). A trial court is not required to impose a minimum sentence merely because mitigating evidence exists. *People v. Sims*, 403 Ill. App. 3d 9, 24 (2010). This is especially true when the seriousness of the offense indicates a sentence greater than the minimum is warranted. See *People v. Harmon*, 2015 IL App (1st) 122345, ¶ 123 ("Because the most important sentencing factor is the seriousness of the offense, the court is not required to give greater weight to mitigating factors than to the seriousness of the offense nor does the presence of mitigating factors either require a minimum sentence or preclude a maximum sentence.").

¶ 70 Defendant argues the trial court rejected mitigating evidence showing (1) his character and attitude made it unlikely he would commit other crimes, (2) he would not pay restitution, and (3) his criminal conduct was the result of circumstances unlikely to recur.

¶ 71 We cannot conclude the trial court abused its discretion when it found these factors did not apply. See *People v. Rydberg*, 2023 IL App (4th) 210016-U, ¶ 24 ("The trial court's finding that no statutory factors in mitigation applied was not an abuse of discretion."). Putting aside the fact, as the State observes, Beathea cannot be compensated because he is deceased (see *People v. Primmer*, 111 Ill. App. 3d 1046, 1052 (1983) (concluding factor six cannot be properly found when, in contrast to the defendant's statement he intended to pay the victims, "the defendant could never compensate the victims")), and it is true defendant answered in the affirmative when his attorney asked him if he would pay restitution, factor six (730 ILCS 5/5-5-3.1(a)(6) (West 2022)),

- 23 -

the court found not that defendant refused to pay restitution but that it "[had] not heard a *willingness* to compensate [Beathea]." (Emphasis added.) Defendant's answer to a leading question could very well have caused the court pause when assessing this factor, especially when defendant sought sympathy in his statement in allocution rather than forgiveness for killing Beathea. As noted previously, the court does not have to accept as true a defendant's unrebutted statements. See *Ward*, 113 Ill. 2d at 532; *Younge*, 83 Ill. App. 3d at 309.

¶ 72    When the trial court concluded it was not unlikely defendant's criminal conduct would recur (730 ILCS 5/5-5-3.1(a)(8) (West 2022)), it commented on the fact it was a difficult factor to assess, as defendant had no criminal history and led a law abiding life up until the shooting. However, balanced against that was the "depravity" of the offense. Specifically, defendant "willing[ly] *** fire[d] *** many shots at a crowded party." The court found that "casts a pallor over the good character that [the court] hear[d] from [defendant's] witnesses and *** saw in the [PSI]." We agree. The fact Beathea was shot in the back by defendant, and bullets from the type of gun Beathea owned were found in areas of the house suggesting Beathea was trying to run away shows Beathea, not defendant (who is the only one who said he was shot once from behind), was trying to get away, and defendant continued firing at him. In the process, defendant injured many other people. Regardless of the fact defendant will not be able to own a gun in the future, we cannot say, given the circumstances, defendant will not be intoxicated and violently act out in the future.

¶ 73    In arguing the trial court improperly rejected factor nine, *i.e.*, defendant's character and attitude indicated he was unlikely to commit another crime (*id.* § 5-5-3.1(a)(9)), defendant contends the court found "it had not 'heard much resembling an apology,' " even though several character witnesses asserted defendant was remorseful and defendant said, " 'I am sorry' " in his

- 24 -

statement in allocution. Although the court so stated, it explained defendant briefly expressed his condolences to Beathea's family and then, immediately thereafter, launched into a lengthy statement about how he had no choice but to shoot and kill Beathea if he himself wanted to stay alive. The court clearly disbelieved defendant's expressions of remorse and the testimony of his biased witnesses. See *People v. Fein*, 2017 IL App (1st) 152091, ¶ 615 ("The trier of fact may accept as much or as little of the evidence as it finds credible"). Given defendant's continued belief that he was justified in using deadly force, the court found it had not heard sufficient evidence to find factor nine applied, despite the fact many biased witnesses indicated defendant was remorseful. We cannot say this finding was an abuse of discretion.

¶ 74        In sum, the trial court did not abuse its discretion when it rejected mitigating factors six, eight, and nine. The court, which witnessed defendant's demeanor and assessed his credibility, was well within its right to find defendant was not sincere when he indicated he would pay restitution and was remorseful. Moreover, given defendant's intoxication and the short time in which a verbal disagreement erupted into a shooting match, we cannot conclude the trial court abused its discretion when it found defendant's criminal conduct was not unlikely to recur.

¶ 75        As a final matter, we observe the offense here was egregious. Defendant, while highly intoxicated, shot at people during a crowded house party after becoming physically aggressive with a man he did not know, leaving Beathea dead and several other partygoers injured. When balancing the serious nature of the crime and the circumstances in which it arose against defendant's lack of criminal history and other positive attributes, we cannot conclude the trial court abused its discretion in sentencing defendant to 12 years' imprisonment.

¶ 76                        III. CONCLUSION

¶ 77        For the reasons stated, we affirm the trial court's judgment.

¶ 78        Affirmed.